**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. ATTIYAH HERRING, *Defendant*. | Crim. No. 16-125 **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

Currently pending before the Court is the motion from Defendant Attiyah Herring in which he seeks immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). D.E. 38. The Government filed opposition. D.E. 39. The Court reviewed the parties' submissions and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, Defendant's motion is denied.

I.   BACKGROUND

A.  Underlying Criminal Proceeding

On March 14, 2016, Herring was indicted on five counts: Count One – felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count Two – felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count Three – possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); Count Four – possession with intent to distribute cocaine base in violation 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Count Five – discharge of a firearm during, and in relation to, a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii). D.E. 16. Counts One and Two carried a statutory maximum prison sentence of

ten years, Counts Three and Four carried a statutory maximum of twenty years, and Count Five carried a statutory requirement of at least ten years in addition to any sentence imposed for a conviction on either/both Counts Three and Four.

Defendant and the Government thereafter entered into a plea agreement in which Defendant agreed to plead guilty to the first four counts and the Government agreed to dismiss the last count.  D.E. 31.  The parties also agreed to certain stipulations, which were not binding on the Court.  *Id.* at 10-13.  The parties agreed that Herring was a career offender pursuant to U.S.S.G. § 4B1.1(a) and that because the offense statutory maximum was twenty years or more (but less than twenty-five years), the guideline offense level could not be below 32 before any credit for acceptance of responsibility.  *Id.* at 12-13.  Acknowledging Herring's acceptance of responsibility, the parties stipulated that his total guidelines offense level was 29.  *Id.* at 12.  Herring also agreed that if he was sentenced at or below a level 29, he waived his right to appeal and to seek postconviction relief, including pursuant to Section 2255.  *Id.*  Herring then pled guilty on November 22, 2016.  D.E. 29.

Herring was thereafter sentenced on March 7, 2017.  D.E. 34.  At sentencing, the Court calculated Herring's guideline offense level consistent with the parties' stipulations.  D.E. 37 at 7-8.  At a guideline level of 29 and with a criminal history category of VI, Herring faced a guidelines range of 151–188 months.  Herring was sentenced to 120 months on Counts One and Two, as well as 151 months on Counts Three and Four, all to be served concurrently.  D.E. 35 at 1-2.

Defendant is currently housed at FCI Otisville in New York.  His projected release date is August 9, 2026.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html #background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic liver diseases, chronic lung diseases (including asthma if it is moderate to severe), cystic fibrosis, dementia or other neurological conditions, diabetes, certain disabilities, HIV infection,

immunocompromised state, certain mental health conditions, obesity, pregnancy, physical inactivity, sickle cell disease, smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (last update Feb. 25, 2022),[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Finally, racial and ethnic minorities may also be at an increased risk due to societal inequities, such as to access to health care and poorer living conditions. *Coronavirus Disease 2019 (COVID-19)*, "Health Equity Considerations and Racial and Ethnic Minority Groups," Centers for Disease Control and Prevention (July 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html. Factors to be considered are discrimination; healthcare access and utilization; occupation; educational, income, and wealth gaps; and housing. *Id.*

As of January 3, 2023, the United States had 100,622,056 COVID-19 cases, resulting in 1,088,481 deaths. *CDC COVID Data Tracker*, "United States COVID-19 Cases and Deaths by State," https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (Jan. 3, 2023).

1. **Federal Bureau of Prisons**

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits,

---

[1] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

4

inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus, and initially admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screening for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but who has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of fourteen days or until cleared by medical staff. Opp. at 5. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. As of January 3, 2023, the BOP had administered 344,223 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (Jan. 3, 2023).

As of January 3, 2023, the BOP COVID-19 statistics are as follows: (1) currently 229 inmates and 217 staff presently have confirmed positive tests; (2) 47,184 inmates and 14,756 staff have recovered; and (3) 309 inmates and 7 staff have died. *COVID-19 Cases*, Bureau Of Prisons, https://www.bop.gov/coronavirus/index.jsp (Jan. 3, 2023). FCI Otisville, where Defendant is

housed, currently has 1 positive inmate case and 2 positive staff cases while 309 inmates and 101 staff have recovered. *Id.*

### C. Herring's Motion

Herring raises two primary grounds in support of his motion: prison conditions during the pandemic and his post-sentencing rehabilitation efforts. D.E. 38. In opposition, the Government asserts that Herring's motion should be denied because he failed to exhaust his mandatory administrative remedies, he has not demonstrated extraordinary and compelling reasons warranting compassionate release, and the Section 3553(a) factors weigh against granting his motion. D.E. 39.

## II.   LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

(i) *extraordinary and compelling reasons warrant such a reduction*; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

6

> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S. Sentencing Guidelines Manual"). The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. 18 U.S.C. § 3553(a).

### III. ANALYSIS

The Court concludes that Defendant has not met his burden in demonstrating extraordinary and compelling reasons to justify his release. First, he has failed to exhaust his required administrative remedies. Defendant fails to show that he has first sought release from any warden, either at his previous place of incarceration (FCI Schuylkill) or at his current location.

Second, the Court agrees with the Government that prison pandemic lockdowns and restrictions which affected all inmates are insufficient to justify release. *See United States v. Bulaman*, Crim. No. 12-794, 2022 WL 391430, at *3-4 (D.N.J. Aug. 31, 2022). If not, each federal prisoner would be eligible for immediate release. And while the restrictions were certainly onerous, they were implemented to protect the "health and well-being of the prisoners." *Id.* at *3 n.1. Moreover, at the current time, FCI Otisville has a low number of positive cases—3 total.

Third, while Defendant has completed a number of programs and worked within prison, these accomplishments are insufficient to carry his burden. In addition, Defendant's prison record has not been without a few blemishes. In January 2019, Herring was punished for possessing suboxone and marijuana. The following month, Herring refused to work his assigned program, resulting in a loss of additional privileges. Similarly, some of Defendant's claims are inherently contradictory. He asserts that he has worked nonstop in a Unicor program, D.E. 38 at 7-8, while at the same time indicating he was under pandemic lockdown for a long period, *id.* at 9.

Finally, the Section 3553(a) factors countenance against release. Defendant still has a substantial amount of time left on his sentence. He also has a serious criminal record, primarily for drug offenses but also for a conviction stemming from his shooting of another person. And in this particular case, he was mistakenly released early on a gun and drug offense and then was caught committing another drug and gun offense.

For the foregoing reasons, Herring has not shown that he is entitled to compassionate release.

## IV.  CONCLUSION

As a result, and for good cause shown,

IT is on this 4th day of January 2023 hereby

**ORDERED** that Defendant Attiyah Herring's motion for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), D.E. 38, is **DENIED**; and it is further

**ORDERED** that Defendant's related motions for appointment of counsel and BOP records are **DENIED**; and it is further

**ORDERED** that the Clerk's Office shall mail a copy of this Opinion and Order to Defendant by regular mail.  It is noted that Defendant is currently incarcerated in FCI Otisville.

_____
John Michael Vazquez, U.S.D.J.